IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| ANABEL VALENZUELA (2), | ) | CRIM. NO. 07-00615 SOM |
|---|---|---|
| | ) | CIV. NO 11-00750 SOM/RLP |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| UNITED STATES OF AMERICA, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255; ORDER DENYING |
| Respondent. | ) | CERTIFICATE OF APPEALABILITY |
| _____ | ) | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255; ORDER DENYING CERTIFICATE OF APPEALABILITY**

**I.      INTRODUCTION.**

Anabel Valenzuela is a convicted drug dealer. She was convicted by a jury of a conspiracy to launder money and a conspiracy to distribute and possess with intent to distribute in excess of fifty (50) grams of methamphetamine, its salts, isomers, and salts of its isomers. With respect to her drug conspiracy conviction, Valenzuela was sentenced based in part on her leadership role in a conspiracy involving nearly 2,000 pounds of methamphetamine.

On December 9, 2011, Valenzuela filed the present § 2255 petition. Because her arguments lack merit or are procedurally barred, the petition is denied. The court declines to issue a certificate of appealability.

## II.     BACKGROUND.

On September 2, 2008, a jury convicted Valenzuela of conspiring to distribute and possess with intent to distribute in excess of fifty (50) grams of methamphetamine, its salts, isomers, and salts of its isomers. See Verdict, Count 1, ECF No. 373, Sept. 2, 2008; First Superseding Indictment, ECF No. 264, July 2, 2008. Valenzuela was also convicted of conspiring to launder money. See Verdict, Count 3, ECF No. 373, Sept. 2, 2008; First Superseding Indictment, ECF No. 264, July 2, 2008. The following day, September 3, 2008, the jury returned a Special Verdict Form for Forfeiture, determining that the properties identified in Counts 2 and 4 of the indictment were subject to forfeiture.

On January 5, 2009, the court sentenced Valenzuela to 384 months of imprisonment and 5 years of supervised release on the drug conspiracy count, and 240 months of imprisonment and 3 years of supervised release on the money laundering conspiracy count, along with a total of $200 in special assessments. The court ordered the terms of imprisonment to be served concurrently. See Entering Proceeding, ECF No. 440, Jan. 5, 2009; Judgment, ECF No. 445, Jan. 9, 2009.

In sentencing Valenzuela, the court adopted the Presentence Investigation Report and determined that Valenzuela's total offense level was 46. See Transcript of Proceedings (Jan.

5, 2009) at 10, ECF No. 575, May 5, 2009. Based on the amount of methamphetamine involved (907.2 kilograms), Valenzuela had a base offense level of 38. She received a two-level increase for having been convicted of an 18 U.S.C. § 1956 violation, a four-level increase for her role in the offense, and a two-level increase for obstructing justice.

On January 15, 2009, Valenzuela appealed. See Notice of Appeal, ECF No. 452, Jan. 15, 2009.

On December 15, 2010, the Ninth Circuit affirmed Valenzuela's conviction and sentence in an unpublished memorandum decision. See United States v. Acuna, 2010 WL 5188977 (9th Cir. Dec. 15, 2010), ECF No. 636. The Ninth Circuit determined that "[t]here was sufficient evidence supporting the convictions, as the evidence demonstrated that Acuna, Valenzuela, and Olguin were leaders and organizers in the single conspiracy alleged in the indictment."[1] Id. at 3. The Ninth Circuit also determined that this court "did not clearly err in imposing a two-level enhancement to Valenzuela's sentence for obstruction of justice." Id. at 6.

On December 9, 2011, Valenzuela filed the present petition under § 2255 to vacate, set aside or correct a sentence.

---

[1]Two conspiracies were actually alleged (a drug conspiracy and a money laundering conspiracy). Although Acuna, Valenzuela, and Olguin were allegedly involved in both conspiracies, only Acuna and Valenzuela were charged in the money laundering conspiracy count.

See ECF No. 648, Dec. 9, 2012. Valenzuela raises two arguments. First, she claims that her attorney was ineffective in failing to ensure that the jury included Hispanic persons. Valenzuela says that, because the jury was made up of "all Hawaiian people," and because the prosecutor and this judge were also "Hawaiian," the jury was biased against her. Second, Valenzuela raises a Booker/Blakeley challenge, arguing that the court improperly applied various sentencing enhancements and that her attorney was ineffective in allowing those enhancements.

The court held a hearing at which oral argument, but no sworn testimony, was allowed. The court now denies Valenzuela's petition without holding an evidentiary hearing, as the record before the court conclusively demonstrates that Valenzuela is not entitled to § 2255 relief. See 28 U.S.C. § 2255(b) (requiring a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

### III. ANALYSIS.

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

4

There are limitations on the kinds of claims that can and cannot be raised in a § 2255 petition.

For example, a § 2255 petition cannot be based on a claim that has already been disposed of by an underlying criminal judgment and appeal. As the Ninth Circuit stated in <u>Olney v. United States</u>, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Even when a § 2255 petitioner has not raised an alleged error either at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. As the Court said in <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." <u>Id.</u>; <u>accord</u> <u>Davis v. United States</u>, 411 U.S. 233, 242 (1973). To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors

5

at [her] trial created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.

Although Valenzuela's claims are couched as ineffective assistance of counsel claims, her claims are procedurally barred because she could have raised the matters earlier. Even if the court examined her claims, she would not succeed, as she fails to show ineffective assistance of counsel. That is, she fails to show that (1) her counsel's performance was deficient, and (2) the deficient performance prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after

6

conviction," judicial scrutiny of counsel's performance is highly deferential. Id. at 689.

### A. Counsel Was Not Ineffective In Failing to Ensure That the Jury Contained at Least One Hispanic Person.

Valenzuela contends that her counsel was ineffective because he did not ensure that she was tried before a jury of her peers, which she says had to include at least one Hispanic person. Valenzuela indicates that her jury, the judge, and the prosecuting attorney were all "Hawaiian." The court interprets this statement as referring to individuals who reside in Hawaii, as opposed to referring to individuals of native Hawaiian blood. That is, as Valenzuela fails to point to any basis for asserting that all jurors, the judge, and the Assistant United States Attorney were racially Hawaiian, the Court treats "Hawaiian" as analogous to "Californian."

Valenzuela could have challenged the make up of her jury on direct appeal. Having not done so, Valenzuela may not raise it in the present § 2255 petition without showing both cause and actual prejudice. See Frady, 456 U.S. at 167-68. She shows neither. Even assuming that her counsel prevented her from raising the issue earlier or that she otherwise showed cause for

7

her failure to raise the issue on direct appeal, Valenzuela's challenge fails, as she shows no prejudice.

Under the Sixth Amendment of the United States Constitution and the Federal Jury Service and Selection Act of 1968, 28 U.S.C. §§ 1861-78, a criminal defendant is guaranteed the right to be tried by an impartial jury drawn from a representative cross-section of the community.  Accordingly, the right to a jury "necessarily contemplates an impartial jury drawn from a cross-section of the community."  Thiel v. S. Pac. Co., 328 U.S. 217, 220 (1946); United States v. Mitchell, 502 F.3d 931, 949 (9th Cir. 2007).  This does not mean, however, that every jury must contain representatives of all economic, social, religious, racial, political, and geographical groups in the community.  A defendant is guaranteed only that prospective jurors will be selected by court officials without systematic and intentional exclusion of any group.  Thiel, 328 U.S. at 220; United States v. Esquivel, 88 F.3d 722, 724-25 (9th Cir. 1996).

"A defendant establishes a prima facie violation of the fair-cross-section requirement by showing (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the

8

number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Mitchell, 502 F.3d at 950. Valenzuela fails to show that this court did not properly select the jury from a representative cross-section of the community, as she fails to show that Hispanics were underrepresented in the court's jury pool.

The court additionally rejects Valenzuela's argument that there needed to be at least one Hispanic person on the jury to ensure that she was tried by a jury of her peers. Although Valenzuela had the right to be tried by a jury whose members were selected using nondiscriminatory criteria, she had no right to a jury composed in whole or in part of Hispanic persons. See Powers v. Ohio, 499 U.S. 400, 404 (1991) (noting that "a defendant has no right to a petit jury composed in whole or in part of persons of the defendant's own race" (quotations and citation omitted)); Mitchell, 502 F.3d at 950 ("a violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury. While juries must be drawn from a source fairly representative of the community, the composition of each jury need not mirror that of the community" (quotation and citation omitted)).

Valenzuela is not arguing that Hispanics were systematically excluded from her particular jury. See Powers, 499 U.S. at 404 (noting that a defendant has a right to be tried by a jury whose members are selected based on nondiscriminatory criteria). She appears instead to be arguing that her particular jury lacked Hispanics. Nothing in the record indicates the race or ethnicity of the jurors. At most, the record indicates their names. See Transcript of Proceedings of August 6, 2008, at 180, ECF No. 568. The record does not indicate whether particular jurors were of mixed race, or whether, because of, for example, adoption or marriage, a juror's surname might not reflect the juror's race or ethnicity. In short, neither through the nature of her argument nor in the facts in the record does Valenzuela establish prejudice.

### B. **Blakely** and **Booker** Do Not Justify Relief.

Valenzuela argues that her sentence was improperly enhanced in violation of Blakely and Booker, and that her attorney was ineffective in failing to raise that argument. This court disagrees.

Valenzuela's argument originates out of Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty

for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Id. at 303. The Supreme Court explained:

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," . . . and the judge exceeds his proper authority.

Id. at 303-04.

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court reaffirmed its holding in Apprendi, stating, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 244.

11

Valenzuela argues that, because she did not admit to a leadership role and the jury did not find that she was a leader based on a "beyond the reasonable doubt" standard, the court violated <u>Blakely</u> and <u>Booker</u> by adding four levels to her base offense level.[2] The Ninth Circuit, however, has already rejected Valenzuela's claim that she was not a leader. In its Memorandum Disposition, the Ninth Circuit stated that "the evidence demonstrated that . . . Valenzuela . . . [was a] leader[] and organizer[] in the single conspiracy alleged in the indictment." <u>See</u> ECF No. 636 at 3. Because Valenzuela was unsuccessful in

---

[2]In the conclusion of her memorandum, Valenzuela implies that all Defendants who take the stand and are found guilty are subject to the "obstruction" enhancement. That is simply not the case, as the "obstruction" enhancement is not automatic. For example, in Valenzuela's case, the "obstruction" enhancement was added because the court determined that it was supported by the record. <u>See</u> Transcript of Proceeding of January 5, 2009, at 10, ECF No. 575. At trial, Valenzuela testified that she had not sold drugs, that she had not distributed drugs, and the she had not received the proceeds from drugs. <u>See</u> Transcript of Proceeding of August 27, 2008, at 12-108, 12-132, ECF No. 564. She also denied having been part of any conspiracy to send drugs from Las Vegas to Hawaii. <u>See</u> <u>id.</u> at 12-80. When those statements are compared to the jury verdict, it is clear that the "obstruction" enhancement was appropriate, but it is not the case that every defendant who is convicted after testifying automatically receives that enhancement. A defendant whose testimony goes to an immaterial matter might not receive an obstruction enhancement. Alternatively, a judge who concludes that a defendant's testimony was inaccurate because of a genuinely faulty memory or perception would be unlikely to apply an obstruction enhancement.

12

arguing this point on appeal, she may not now raise it. See Olney, 433 F.2d at 162.

In any event, the enhancements to her base offense level did not violate Apprendi, Blakely, or Booker because she did not receive a sentence greater than the statutory maximum. See United States v. Saya, 247 F.3d 929, 942 (9th Cir. 2001) ("We have held repeatedly that a defendant cannot obtain relief under Apprendi when his sentence does not exceed the statutory maximum authorized by the jury's verdict, even if the district court determined the drug amount by a preponderance of the evidence, instead of having the jury determine the amount beyond a reasonable doubt."). The statutory maximum based on the verdict was life imprisonment. See 21 U.S.C. § 841(b)(1). Valenzuela's attorney could not have been ineffective in failing to make an argument based on Apprendi, Blakely, or Booker because Valenzuela's sentence, even with the enhancements applied at sentencing, was less than life. The absence of jury findings increasing Valenzuela's offense level using a beyond-a-reasonable-doubt standard therefore does not justify § 2255 relief.

Recognizing that Booker held that the sentencing guidelines were advisory, the court expressly stated that they

were "advisory only." See Transcript of Proceedings of January 5, 2009, at 10, ECF No. 568. Indeed, the guideline range was life. See id. at 8, 10. As with the statutory maximum, Valenzuela's sentence was less than the guideline range. Valenzuela's counsel argued that the leadership enhancement was inapplicable as a factual matter, not based on Apprendi, Blakely, or Booker. See id. at 3-6, 8, 10. Valenzuela, having made a meritless Apprendi, Blakely, and Booker argument, shows no prejudice in that regard.

### C. Other Arguments Do Not Justify § 2255 Relief.

In her conclusion (but not in the body of her petition or memorandum), Valenzuela contends that "her sentence was unreasonable and that the Court did not impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing." This argument was not raised on appeal and Valenzuela advances no reason why it could not have been so raised. Valenzuela is thus barred from raising the argument in this motion. Frady, 456 U.S. at 167-68. Valenzuela simply fails to demonstrate the cause and actual prejudice necessary to raise the matter in the present § 2255 petition.

At the hearing on this matter on May 15, 2012, Valenzuela, echoing an argument made by Defendant Benjamin Acuna

14

(Valenzuela's spouse), for the first time contended that she had not understood that she could have pled guilty. She said she might have pled guilty to the money laundering conspiracy and gone to trial on only the drug conspiracy or at least contested the drug amount. This argument is untimely, as Valenzuela advanced no reason at the hearing for having failed to raise it within one year of March 2011, when her judgment on appeal became final. See 28 U.S.C. § 2255(f); Clay v. United States, 537 U.S. 522, 524-25 (2003) (holding that, when a defendant appeals his or her conviction to the Circuit Court of Appeals, but does not request a writ of certiorari from the Supreme Court, a judgment becomes final and the limitations period begins to run upon the expiration of the time to petition for a writ of certiorari to the Supreme Court); United States v. Garcia, 210 F.3d 1058 (9th Cir. 2000) ("Following the Supreme Court's definition of finality in the context of habeas review, we hold that the one-year limitations period for a federal prisoner who does not file a petition for a writ of certiorari begins to run when the time for filing the petition expires."); Sup. Ct. R. 13(1) (requiring certiorari to be sought within 90 days).

At the hearing, Valenzuela conceded that her drug conspiracy sentence exceeded her concurrent money laundering

15

conspiracy sentence, and that pleading guilty to only the money laundering conspiracy count would not have shortened her drug conspiracy sentence. With respect to drug amount, Valenzuela did object to the drug amount at the time of sentencing, arguing that she should have only been responsible for about 700 pounds of methamphetamine, rather than 2,000 pounds, but her objection did not affect the guideline range. See Transcript of Proceedings of January 5, 2009, at 8, ECF No. 575.

Finally, in a single sentence on pages 16 and 17 of her memorandum, Valenzuela complains that she was, in essence, "charged twice for the same offense" because she received a two-level enhancement for being convicted of money laundering. Again, Valenzuela provides no reason this argument could not have been raised on appeal. Accordingly, Valenzuela is procedurally barred from raising the argument now. See Frady, 456 U.S. at 167-68.

Even if the court were to examine the issue, Valenzuela is simply wrong. Pursuant to application note 6 of § 2S1.1, the court grouped Valenzuela's counts for sentencing purposes pursuant to § 3D1.2(c), as she was convicted of both a count involving funds that were laundered and a count involving the underlying offense from which the funds were derived. The court

16

then determined the offense level applicable to the grouped offenses. Because the money laundering conspiracy count, as opposed to the drug conspiracy count, provided for the higher offense level for the grouped offenses, the court used § 2S1.1, the money laundering guideline, in determining Valenzuela's offense level.

Under § 2S1.1, the money laundering offense level is affected by the offense from which the laundered funds were derived. Valenzuela's resulting base offense level was 38. The court added two levels pursuant to § 2S1.1(b)(2)(B) because Valenzuela had laundered monetary instruments in violation of 18 U.S.C. § 1956. Valenzuela received a four-level increase for her role in the offense pursuant to § 3B1.1(a), and a two-level increase for obstruction of justice pursuant to § 3C1.1. This gave her an adjusted offense level of 46 for the grouped offenses and a guideline range of life for the offenses.

With respect to the drug conspiracy count, 21 U.S.C. § 841(b)(1)(A) required a term of imprisonment between ten years to life. The court sentenced Valenzuela to 384 months of imprisonment for the drug conspiracy offense, less than the guideline range of life.

17

The statutory maximum term for imprisonment on the money laundering conspiracy count was twenty years pursuant to 18 U.S.C. § 1956(a)(1). The court sentenced Valenzuela to twenty years of imprisonment for the money laundering conspiracy count, rather than the guideline range of life.

Valenzuela is factually incorrect in asserting that the two-level enhancement for her § 1956 conviction amounted to double counting. That enhancement was applied only once, and nothing else in the guideline calculation addressed a § 1956 conviction specifically. There was no double counting involved with her sentencing.

> D. **The Court Declines to Issue a Certificate of Appealability.**

The court also declines to grant Valenzuela a certificate of appealability. An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of section 2253(c)(2), "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When, however, a

> district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Id.

No reasonable jurist would find this court's assessment of the merits of Valenzuela's constitutional claims debatable or wrong. Nor would any reasonable jurist determine that the various procedural grounds for denying Valenzuela's § 2255 petition are debatable.

19

**IV.    CONCLUSION.**

For the foregoing reasons, Valenzuela's § 2255 Petition is denied, and no certificate of appealability issues.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 21, 2012.



    /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Valenzuela v. United States, CRIM. NO. 07-00615 SOM; CIV. NO 11-00750 SOM/RLP; ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255; ORDER DENYING CERTIFICATE OF APPEALABILITY